Rafael Antonio MOLINA

v.

**CITY OF LANCASTER, et. al.**

No. CIV. A. 00–3508.

United States District Court, E.D. Pennsylvania.

March 30, 2001.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court are the Plaintiff's Motion to Proceed In Forma Pauperis (Docket No. 13), the Plaintiff's Petition for Appointment of Counsel (Docket No. 12), the Plaintiff's Motion for Postponement of Current Civil Complaint (Docket No. 14), the Defendants', City of Lancaster, Joseph McGuire, Gregory Macey, and George Bonilla, Motion to Dismiss (Docket No. 3), the Defendant Fisher's Motion to Dismiss (Docket No. 4), the Defendants' County of Lancaster, Joseph A. Madenspacher, Cheryl A. Ondecheck, and Lancaster County District Attorney's Office, Motion to Dismiss (Docket No. 7), the Defendants', Walters and Edmunson, Motion for an Extension of Time to respond to Plaintiff's Complaint (Docket No. 9), the Defendants', Walters, Lescosky, Edmunson, Kulman, and the Lancaster County Drug Task Force, Motion to Dismiss (Docket No. 10); the Plaintiff's first Counter Motion to Dismiss Defendants Motion to Dismiss (Docket No. 6), and the Plaintiff's second Counter Motion to Dismiss Defendants Motion to Dismiss (Docket No. 11).

## I. BACKGROUND

The Plaintiff, Rafael Antonio Molina, instituted this civil action alleging violations of his civil rights by the Defendants the City of Lancaster, Pennsylvania Attorney General Mike Fisher, the Lancaster County District Attorney's Office (DA's Office), District Attorney Joseph C. Madenspacher, Assistant District Attorney

Cheryl A. Ondecheck, the Lancaster County Drug Enforcement Task Force (LCDETF), Sergeant Joseph McGuire, Detective Jan Walters, Detective Gregory Macey, Detective George Bonilla, Detective Andrew Lescosky, Detective Edmundson, and Detective Kulman (collectively referred to as "the Defendants"). *See* Pl.'s Compl. at 2–3, ¶¶ 2–14. In his complaint, the Plaintiff alleges violations of 18 U.S.C. §§ 241-242, 42 U.S.C. § 1985, and § 1983 based upon violations of his constitutional rights contained in the Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments. *See* Pl.'s Compl. at 1. Because the Plaintiff has prepared his "Complaint" pro se, the Court will view it under a "less stringent standard[ ] than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

Upon accepting as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them, the pertinent facts of this case are as follows. The Plaintiff is an ordained minister. *See* Pl.'s Compl. at 4, ¶ 1. In his capacity as minister, the Plaintiff was visiting the home of Ruthy Garcia on November 3, 1995. *See* Pl.'s Compl. at 4, ¶ 1. At approximately 5:00 p.m., the LCDETF, led by Sergeant McGuire, broke into Ms. Garcia's home without a valid search warrant and without identifying themselves. *See* Pl.'s Compl. at 4, ¶ 2. While officers were searching Ms. Garcia's home, the Plaintiff was hit in the head with a flashlight, punched, dragged around, slammed against a wall, and kicked in the groin by Detective Macey. *See* Pl.'s Compl. at 4, ¶ 2. During the course of the search, the police found 3.5 grams of cocaine. *See* Pl.'s Compl. at 4, ¶ 3.

As a result of finding the drugs on November 3, 1995, the police arrested and imprisoned the Plaintiff. *See* Pl.'s Compl. at 4, ¶ 3. Despite the fact that the police had no physical evidence connecting the Plaintiff to the drugs and were aware that he was just visiting Ms. Garcia's residence as a minister, the Plaintiff was incarcerated for over six months on this charge. *See* Pl.'s Compl. at 4, ¶ 4. In addition, Detective Walters admitted that the Plaintiff was not the person the task force was seeking. *See* Pl.'s Compl. at 4, ¶ 4. To justify this arrest and imprisonment, the Defendants intentionally falsified evidence including the Plaintiff's statement, several search warrants, and other legal documents. *See* Pl.'s Compl. at 4, ¶ 5. The charges were eventually dropped against the Plaintiff on May 15, 1998. *See* Pl.'s Compl. at 5, ¶ 6.

## II. DISCUSSION

### A. Motion to Proceed In Forma Pauperis

■ The federal *in forma pauperis* statute is designed to provide access to the federal courts to indigent litigants. *See Neitzke, et. al. v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see also* 28 U.S.C.A. § 1915(a) (West Supp.2000). Once an indigent litigant provides an affidavit containing the prescribed information, the Court "may authorize the commencement, prosecution or defense of any suit, . . . without prepayment of fees." § 1915(a). In support of his motion to proceed *in forma pauperis,* Plaintiff has submitted an affidavit stating that he has no checking or savings account, no property or real estate, and no other tangible property. It appears from his affidavit that Plaintiff does not have the funds necessary to pay the fees associated with pursuing this action. As a result, leave to proceed *in forma pauperis* is granted.

### B. Motion for Appointment of Counsel.

■■ The Plaintiff included a motion for appointment of counsel with his motion

to proceed *in forma pauperis.* Congress has provided that a district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C.A. § 1915(e)(1) (West Supp.2000). Because the statute gives the district court broad discretion, the United States Court of Appeals for the Third Circuit has set forth a two-tiered analysis to guide the courts in their exercise of that discretion. *See Tabron v. Grace,* 6 F.3d 147, 155–58 (3d Cir.1993). Under the *Tabron* court's analysis, a district court must first determine whether the case has arguable legal and factual merit. *Id.* at 155. If the case is meritorious, then a court must consider whether: (1) the plaintiff is able to present her case; (2) the degree of difficulty or complexity of the legal issues; (3) the "degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation," including whether discovery will be extensive; and (4) the extent to which the case will turn on credibility determinations and experts will be needed. *Id.* at 155–56.

The Plaintiff alleges that the Defendants have violated a number of his constitutional rights. *See* Pl.'s Compl. at 6, ¶ 14(b). While the Plaintiff does not articulate which factual allegations violate which rights, the Court will view his pro se complaint more liberally. *See Haines,* 404 U.S. at 520, 92 S.Ct. at 596. In addition, at this stage of the proceedings, the plaintiff does not have to "set out in detail the facts upon which he bases his claim," but instead only needs to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see* Fed.R.Civ.P. 8(a)(2). Prior to analyzing the merits of the Plaintiff's claims, the Court must first determine the parameters of his allegations.

Section 1983 creates a species of tort liability. *See Hector v. Watt,* 235 F.3d 154, 155 (3d Cir.2001). Analogizing the Plaintiff's allegations with the common law of torts is an appropriate starting point in a section 1983 analysis. *See Hector,* 235 F.3d at 155. The Plaintiff alleges that the residence was illegally searched, he was beaten, he was arrested without probable cause, he was imprisoned while the Defendants knew he was not the right man, and the case was kept open against him with false information and lies while he was wrongfully kept in prison for six months. *See* Pl.'s Compl. at 5–6, ¶¶ 8–14. These allegations most appropriately support violations of the Fourth Amendment provisions against unlawful searches and seizures. *See generally Gallo v. City of Philadelphia,* 161 F.3d 217, 221–22 (3d Cir.1998). Analogizing to tort law, the Court finds the Plaintiff has asserted claims under the Fourth Amendment for false arrest, false imprisonment, trespass, excessive use of force, and malicious prosecution. *See* Pl.'s Compl. at 5–6, ¶¶ 8–14. In addition, the Plaintiff has asserted a claim for conspiracy to violate these rights. *See* Pl.'s Compl. at 6, ¶ 14.

### 1. *Legal and Factual Merit of the Plaintiff's Claims*

Prior to analyzing the merits of the Plaintiff's civil rights claims under section 1983, the Court will quickly address two other potential claims alleged in the complaint. First, the Court deems the Plaintiff's claim for relief pursuant to 18 U.S.C. §§ 241-242 unmeritorious because those statutes do not create a civil cause of action enforceable by the Plaintiff. *See United States v. Philadelphia,* 482 F.Supp. 1248, 1260–63 (E.D.Pa.1979) (no civil cause of action for 18 U.S.C. §§ 241-242). In addition, unlike an conspiracy claim under section 1983, a section 1985 conspiracy requires allegations of invidious discrimina-

tion. *See Ridgewood Bd. of Ed. v. N.E.*, 172 F.3d 238, 253–54 (3d Cir.1999). Because nothing in the Plaintiff's complaint suggests that these actions were taken because is the member of a class, the Plaintiff's section 1985 claim has no merit.

 Because the series of events leading to this cause of action began on November 3, 1995, the Court's analysis of the Plaintiff's section 1983 claims will first address the issue of the statute of limitations. The statute of limitations in section 1983 cases is taken from the state's statute of limitations for personal injury. *See Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998). Because Pennsylvania's statute of limitations for personal injury is two years, the Plaintiff has two-years from the time a section 1983 cause of action accrues to file his lawsuit. *See* 42 Pa. Cons.Stat. Ann. § 5524 (West 2001); *see also Sameric Corp. of Delaware*, 142 F.3d at 599. "A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. of Delaware*, 142 F.3d at 599.

 Federal Rule of Civil Procedure 5(e) states that "[t]he filing of papers with the court as required by these rules shall be made by filing them with the clerk of court." Fed.R.Civ.P. 5(e) (West 2001). The Plaintiff originally remitted his complaint with a fifty dollar filing fee to the United States District Court for the Middle District of Pennsylvania on May 10, 2000. On May 22, 2000, the Clerk of Court sent a notice to the Plaintiff stating that an additional one hundred dollars was required for filing of his complaint. The Plaintiff remitted the additional one hundred dollars and the Clerk marked the complaint filed on June 2, 2000. The Third Circuit has explicitly stated that "[a]lthough a complaint is not formally filed until the filing fee is paid, we deem a complaint to be constructively filed as of the date that the clerk received the complaint—as long as the plaintiff ultimately pays the filing fee...." *McDowell v. Delaware State Police*, 88 F.3d 188, 191 (3d Cir.1996). Therefore, the Plaintiff's complaint is deemed filed for statute of limitations purposes on May 10, 2000.

 Mindful that certain tort actions inherently imply the invalidity of state criminal proceedings, the Supreme Court has held that section 1983 causes of action will not accrue as to those torts until the criminal proceedings have been terminated in favor of the accused. *See Heck v. Humphrey*, 512 U.S. 477, 486, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994). Following this reasoning, the Court stated that "a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor." *Id.* at 489, 114 S.Ct. at 2374. The criminal charges against the Plaintiff were dropped on May 15, 1998 and the statute of limitations period ran until May 15, 2000. Because the Plaintiff's complaint was filed on May 10, 2000, the Plaintiff's claims for malicious prosecution were filed within the statute of limitations period.

 The same analysis applies to the remainder of the Plaintiff's claims. The Third Circuit has stated that false arrest and false imprisonment claims are not the type of claims contemplated by the Supreme Court in *Heck*, and that they accrue on the night of the arrest. *See Montgomery v. De Simone*, 159 F.3d 120, 126 n. 5 (3d Cir.1998). In addition, because findings of excessive use of force or trespass would not render a conviction invalid, the Plaintiff's causes of action for trespass and excessive use of force accrued on November 3, 1995. *See Groman v. Township of Manalapan*, 47 F.3d 628, 633–34 (3d Cir.1995). It is clear that the statute of limitations on these claims

expired long before May 10, 2000. Therefore, the Plaintiff's claims for false imprisonment, false arrest, trespass, and excessive use of force are barred by the statute of limitations.

Beyond the issue of statute of limitations, the Court must also look at the merits of the Plaintiff's remaining claims: malicious prosecution and conspiracy under section 1983. A standing principle of section 1983 jurisprudence is the notion that respondeat superior liability applies only when the constitutional injury is inflicted pursuant to an official custom or policy. *See Monell v. Dep't of Soc. Serv. of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *see also Carter v. City of Philadelphia,* 181 F.3d 339, 356 (3d Cir.1999). When a claim involves a failure to train or supervise employees, section 1983 liability may attach if the Plaintiff can show that the failure amounts to "deliberate indifference" to the rights of the people who will come into contact with the employees. *See Carter,* 181 F.3d at 357. The Plaintiff's complaint contains no allegations that his rights were violated as a result of an official custom or policy, nor does he assert facts which would support any claims of deliberate indifference. In fact, the Plaintiff's allegations against the municipal and supervisory Defendants did not implicate them in anything other than a respondeat superior fashion by asserting that those defendants' "agents and employees committed civil and criminal acts, in violation of the U.S. Constitution, against Plaintiff." *See* Pl.'s Compl. at 2, ¶¶ 2–5, 7. As a result, the Plaintiff's claims against the City of Lancaster, the Pennsylvania Attorney General Mike Fisher, the Lancaster County District Attorney's Office, District Attorney Joseph C. Madenspacher, and the LCDETF have no merit.

The next hurdle to imposing section 1983 liability to officers acting in their official capacities is the issue of immunity. Prosecutors have absolute immunity for actions which are "intimately associated with the judicial phase of the criminal process." *See Buckley v. Fitzsimmons,* 509 U.S. 259, 270, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993). In this case, the Plaintiff alleges that the Defendant Assistance District Attorney Cheryl Ondecheck fabricated evidence and charges against him. *See* Pl.'s Compl. at 2, ¶ 6. Because the Defendant Ondecheck was acting in her prosecutorial role of initiating judicial proceedings against the Plaintiff, the Court finds that she is entitled to absolute immunity. *See Imbler v. Pachtman,* 424 U.S. 409, 427–28, 96 S.Ct. 984, 993–94, 47 L.Ed.2d 128 (1976). Most executive officials, including police, are entitled to at least qualified immunity. *See Buckley,* 509 U.S. at 273, 113 S.Ct. at 2616. When evaluating a claim of qualified immunity, the Court must determine if a constitutional violation has occurred, and then determine whether it was clearly established at the time of the violation. *See Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999). It is clear that the Plaintiff has appropriately alleged a constitutional violation; furthermore, the right to be free from the fabrication of evidence, falsifying documents, and malicious prosecution is clearly established. *See generally Orsatti v. New Jersey State Police,* 71 F.3d 480, 484 (3d Cir.1995) (stating clearly established right to be free from arrest without probable cause). Therefore, the police officers in this case do not have qualified immunity.

For the foregoing reasons, the only claims of the Plaintiff's to survive the first stage of the *Tabron* analysis is the Plaintiff's claim for malicious prosecution based upon the Fourth Amendment and conspiracy under section 1983 against the police officers named in the complaint. Because

the Court found that the remaining allegations under section 1983, 18 U.S.C. §§ 241-242, and section 1985 fail to state a claim upon which relief may be granted, the Court must dismiss these claims pursuant to 28 U.S.C.A. § 1915(e)(2)(B)(i)(ii) (West Supp.2001). In addition, because the Court found that the City of Lancaster, the Pennsylvania Attorney General Mike Fisher, the Lancaster County District Attorney's Office, District Attorney Joseph C. Madenspacher, and the LCDETF cannot be held liable under the facts plead, the Court dismisses all claims against those parties pursuant to § 1915(e)(2)(B)(i)(ii). Finally, because Defendant Assistance District Attorney Cheryl Ondecheck is entitled to absolute immunity, the Court dismisses all claims against her pursuant to § 1915(e)(2)(B)(I)(ii).

### 2. Other Factors Concerning Appointment of Counsel

■ In determining if the Plaintiff should be appointed counsel to pursue his remaining claims of malicious prosecution and conspiracy under section 1983, the Court must perform the second tier of the *Tabron* analysis. *See Tabron*, 6 F.3d at 155–56. The Court must consider whether: (1) the plaintiff is able to present his case; (2) the degree of difficulty or complexity of the legal issues; (3) the "degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation," including whether discovery will be extensive; and (4) the extent to which the case will turn on credibility determinations and experts will be needed. *Id.* at 155–56. Looking at the Plaintiff's claims, the issues are not complex and there does not appear to be an overwhelming need for extensive discovery. The Court finds that the Plaintiff can handle his own representation at this time.

For the foregoing reasons, the Plaintiff's motion for appointment of counsel is denied.

### C. Motions to Dismiss by Defendants County of Lancaster, Madenspacher, Ondencheck, Lancaster County DA's Office; and Attorney General Mike Fisher

The County of Lancaster has not been named in the Plaintiff's complaint as a defendant. As to the remaining defendants in these motions, the Court dismissed them from this civil action pursuant to § 1915(e)(2)(B)(i)(ii). Therefore, their motions to dismiss are denied as moot.

### D. Motions to Dismiss by Defendants Walters, Lescosky, Edmundson, Kulman, the Lancaster County Drug Task Force, the City of Lancaster, Joseph McGuire, Gregory Macey, and George Bonilla and Motion for an Extension of Time by Walters and Edmundson

The Court received a motion from Defendants Walters and Edmundson to extend the amount of time to respond to the Plaintiff's complaint. Before the Court had an opportunity to rule on the Defendants' motion, they filed their response to the Plaintiff's complaint in the form of a motion to dismiss. The Court grants the Plaintiff's motion for an extension of time and now considers the merits of their motion to dismiss contemporaneously with the motion to dismiss presented by several other police officer defendants. The only argument raised by these defendants is the statute of limitations. As the Court has previously addressed this issue, their motion to dismiss is denied. To the extent that the motions to dismiss involve the Lancaster County Drug Task Force and the City of Lancaster, they were dismissed from this civil action pursuant to

§ 1915(e)(2)(B)(i)(ii). Therefore, their motions to dismiss are denied as moot.

### E. *The Plaintiff's Motion for Postponement of Civil Action*

 The Plaintiff asks that this Court postpone his current civil action if appointment of counsel is not granted. The prerequisite to his motion being satisfied, the Court will also deny the motion for postponement of his current civil action. To allow a delay in prosecution of the Plaintiff's claim would severely prejudice the Defendants. The Plaintiff's filed his complaint five days prior to the running of the statute of limitations. To allow a delay in the proceedings at this point would be the equivalent of tolling the statute of limitations and the Court is unwilling to do that. As a result, the Plaintiff's motion for postponement of his current civil action is denied.

### III. *CONCLUSION*

Based upon the foregoing, the Plaintiff's claims under section 1985, 18 U.S.C. §§ 241-242, the Fifth Amendment, the Sixth Amendment, the Eighth Amendment, the Thirteenth Amendment, and the Fourteenth Amendment are dismissed with prejudice. In addition, claims asserted under section 1983 and the Fourth Amendment against the Defendants City of Lancaster, the Pennsylvania Attorney General Mike Fisher, the Lancaster County District Attorney's Office, District Attorney Joseph C. Madenspacher, the Lancaster County Drug Enforcement Task Force, and Assistance District Attorney Cheryl Ondecheck are dismissed with prejudice. The remaining claim in Plaintiff's complaint is a section 1983 claim for malicious prosecution and conspiracy based in the Fourth Amendment against Joseph McGuire, Jan Walters, George Macey, George Bonilla, Andrew Lescosky, Detective Edmundson, and Detective Kulman.

An appropriate Order follows.

### ORDER

AND NOW, this 30th day of March, 2001, upon consideration of the Plaintiff's Motion to Proceed In Forma Pauperis (Docket No. 13), the Plaintiff's Petition for Appointment of Counsel (Docket No. 12), the Plaintiff's Motion for Postponement of Current Civil Complaint (Docket No. 14), the Defendants', City of Lancaster, Joseph McGuire, Gregory Macey, and George Bonilla, Motion to Dismiss (Docket No. 3), the Defendant Fisher's Motion to Dismiss (Docket No. 4), the Defendants' County of Lancaster, Joseph A. Madenspacher, Cheryl A. Ondecheck, and Lancaster County District Attorney's Office, Motion to Dismiss (Docket No. 7), the Defendants', Walters and Edmunson, Motion for an Extension of Time to respond to Plaintiff's Complaint (Docket No. 9), the Defendants', Walters, Lescosky, Edmunson, Kulman, and the Lancaster County Drug Task Force, Motion to Dismiss (Docket No. 10); the Plaintiff's first Counter Motion to Dismiss Defendants Motion to Dismiss (Docket No. 6), and the Plaintiff's second Counter Motion to Dismiss Defendants Motion to Dismiss (Docket No. 11), IT IS HEREBY ORDERED that:

(1) the Plaintiff's Motion to Proceed *In Forma Pauperis* is **GRANTED**;

(2) the Plaintiff's Motion for Appointment of Counsel is **DENIED**;

(3) the Plaintiff's Motion for Postponement of his Current Civil Complaint is **DENIED**;

(4) the Defendants' City of Lancaster, Joseph McGuire, Gregory Macey, and George Bonilla's Motion to Dismiss is **DENIED**;

(5) the Defendant Mike Fisher's Motion to Dismiss is **DENIED AS MOOT;**

(6) the Defendants James A. Madenspacher, Cheryl A. Ondecheck, and the Lancaster County District Attorney's Office's Motion to Dismiss is **DENIED AS MOOT;**

(7) the Defendants Detective Edmunson and Detective Walters' Motion for an Extension of Time is **GRANTED;**

(8) the Defendants Walters, Lescosky, Edmundson, Kulman, and the Lancaster County Drug Task Force's Motion to Dismiss is **DENIED;**

(9) the Plaintiff's claims under section 1985, 18 U.S.C. §§ 241-242, the Fifth Amendment, the Sixth Amendment, the Eighth Amendment, the Thirteenth Amendment, and the Fourteenth Amendment are **DISMISSED WITH PREJUDICE;** and

(10) the Plaintiff's claims against the City of Lancaster, the Pennsylvania Attorney General Mike Fisher, the Lancaster County District Attorney's Office, District Attorney Joseph C. Madenspacher, the Lancaster County Drug Enforcement Task Force, and Assistance District Attorney Cheryl Ondecheck are **DISMISSED WITH PREJUDICE.**